UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JULIE D.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

No. 4:18-CV-5178-EFS

**ORDER RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

Before the Court are the parties' cross motions for summary judgment, ECF Nos. 11 & 12. Plaintiff Julie D. appeals a denial of benefits by the Administrative Law Judge (ALJ).[2] She alleges the ALJ erred by (1) improperly rejecting the opinions of her medical providers; (2) rejecting Plaintiff's subjective complaints; (3) failing in his step four analysis; and (4) failing in his step five analysis.[3] The Commissioner of Social Security asks the Court to affirm the ALJ's decision finding Plaintiff not disabled.[4] After reviewing the record and relevant authority, the Court grants the

---

[1] To protect the privacy of social-security plaintiffs, the Court refers to them by first name and last initial. *See* LCivR 5.2(c). When quoting the Administrative Record in this order, the Court will substitute "Plaintiff" for any other identifier that was used.
[2] *See generally* ECF No. 11.
[3] *Id.*
[4] ECF No. 12.

ORDER RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT - 1

Commissioner's Motion for Summary Judgment, ECF No. 12, and denies Plaintiff's Motion for Summary Judgment, ECF No. 11.

## I. Factual and Procedural Summary

Plaintiff was born on October 14, 1964.[5] At the time of the administrative hearing, she was 53 years old.[6] Plaintiff owned her own business and was a manicurist.[7] Plaintiff filed an application for Supplemental Security Income (SSI) on December 9, 2014, alleging disability beginning on November 25, 2010.[8] Her claim was denied initially and upon reconsideration.[9] A video hearing was held on October 27, 2017, before Administrative Law Judge Jesse Shumway.[10]

At step one,[11] the ALJ determined that Plaintiff had not engaged in substantial gainful activity since November 25, 2010 through her date last insured on September 30, 2015.[12]

At step two, the ALJ concluded that Plaintiff had the following medically determinable severe impairments: fibromyalgia and obesity.[13] The ALJ also concluded that Plaintiff's restless leg syndrome, GERD, cervical and lumbar degenerative disk disease, pectoralis muscle strain, hypercholesterolemia, PCOS, tinnitus, hernia, xerostomia, sleep apnea, and anxiety disorder were not severe.[14]

---

[5] AR 26.
[6] *Id.*
[7] AR 15.
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] The applicable five-step disability determination process is set forth in the ALJ's decision, AR 20–21, and the Court presumes the parties are well acquainted with that standard process. As such, the Court does not restate the five-step process in this order.
[12] AR 17.
[13] AR 18.
[14] AR 18–19.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.[15]

At step four, the ALJ found that Plaintiff had the residual functional capacity to perform light work as defined in 20 CFR § 404.1567(b) except: she can frequently climb stairs and ramps, balance, stoop, kneel, crouch, and crawl; she can occasionally climb ropes, ladders, and scaffolds; and she should have no concentrated exposure to vibrations and hazards, like unprotected heights and moving mechanical parts.[16]

In reaching these conclusions, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms.[17] However, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record.[18]

In determining Plaintiff's RFC, the ALJ gave some weight to the opinion of Dr. Robert Smiley, the medical expert.[19] The ALJ gave little weight to the opinion of Plaintiff's pain management physician, Dr. Wing Chau.[20] The ALJ gave little weight to Dr. Lisa Galbriath's opinion.[21] The ALJ gave little weight to Dr. Dennen Frazier, Pa-C.[22] The ALJ gave great weight to the Disability Determination Services physician, Dr. Norman Staley.[23] The ALJ gave little weight to the Disability Determination Services physician, Dr. Bruce Eather.[24] The ALJ gave little weight

---

[15] AR 19.
[16] AR 20.
[17] AR 21.
[18] *Id.*
[19] AR 23.
[20] AR 24.
[21] *Id.*
[22] *Id.*
[23] AR 25.
[24] *Id.*

to a consultative psychological examination done by Dr. Greg Sawyer.[25] Finally, the ALJ gave little weight to witness statements of Plaintiff's friends, clients, husband, and father.[26]

At step five, the ALJ found Plaintiff was capable of performing past relevant work as a manicurist.[27]

The ALJ issued an unfavorable decision on February 12, 2018.[28] The Appeals Council denied Plaintiff's request for review,[29] and she timely appealed to this Court.[30]

## II. Standard of Review

A district court's review of the Commissioner's final decision is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."[31] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[32]

It is the role of the ALJ, not this Court, to weigh conflicting evidence and make credibility assessments. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."[33] Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless."[34] An error is harmless "where it is inconsequential to the [ALJ's] ultimate

---

[25] AR 23.
[26] AR 25.
[27] AR 26.
[28] AR 28.
[29] AR 1–6.
[30] ECF No. 1.
[31] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).
[32] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).
[33] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).
[34] *Id.*

nondisability determination."[35] The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.[36]

## III. Applicable Law & Analysis

**A. The ALJ did not err in dismissing Plaintiff's subjective complaints.**

The ALJ properly dismissed Plaintiff's subjective complaints because he provided sufficient reasons that were supported by substantial evidence. In examining Plaintiff's subjective complaints, the ALJ must make a two-step inquiry. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[37] Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."[38] The ALJ properly discounted Plaintiff's testimony because Plaintiff's fibromyalgia improved with treatment, Plaintiff failed to comply with treatment, Plaintiff exhibited symptom magnification, and Plaintiff's daily activities and work history contradicted her testimony.[39]

1. <u>Plaintiff's condition improved with treatment.</u>

The ALJ properly discounted Plaintiff's testimony because she stated that her condition improved after being treated with Fentanyl patches, physical therapy,

---

[35] *Id.* at 1115 (quotation and citation omitted).
[36] *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).
[37] *Molina*, 674 F.3d at 1112.
[38] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).
[39] *See* AR 20–22 (citing reasons for discounting Plaintiff's testimony). The ALJ also concluded that the medical evidence did not support Plaintiff's testimony. "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). However, given the legitimate reasons the ALJ listed for disregarding Plaintiff's testimony, the Court need not address this remaining issue.

acupuncture, and chiropractic treatment.[40] An ALJ may discount a claimant's testimony where a claimant's condition improves with treatment.[41] The ALJ's conclusion that Plaintiff's condition had improved was supported by the record. Medical records also show that Plaintiff had improvement in her pain after physical therapy in 2011.[42] In 2011 through 2015 Plaintiff's records reveal that she was responsive to acupuncture and chiropractic treatment.[43] Further, in 2015 Dr. Chau reported Plaintiff's pain was controlled after he prescribed Fentanyl patches.[44] Therefore, the ALJ properly discounted Plaintiff's testimony.

2. Plaintiff failed to comply with treatment.

The ALJ also properly gave Plaintiff's testimony less weight because she failed to comply with her medical providers' instructions to exercise.[45] An ALJ may reject symptom testimony "if the level or frequency of treatment is inconsistent with the level of complaints[.]"[46] The ALJ concluded:

> [T]here was no indication she was incapable of [exercise].[47] If the claimant's health problems were not severe enough to motivate her to comply with treatment, it is difficult to accept her assertion that they are disabling.[48]

---

[40] AR 21.
[41] *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599–600 (9th Cir. 1999) (evidence of improvement properly considered).
[42] AR 379, 388, 389, 394, 396, 398 (showing general impression, last reports cited stating "responding positively to PT session" and Plaintiff was feeling "pretty good today").
[43] AR 424–431 (noting response to chiropractic an acupuncture treatment), 892–93 (showing slow progression after chiropractic treatment in November 2015), 898–899 (noting slow progression after chiropractic treatment in September 2015).
[44] AR 820–821.
[45] AR 22.
[46] *Molina*, 674 F.3d at 1113 (citations omitted).
[47] AR 22.
[48] AR 22.

This conclusion was supported by the record, as Plaintiff's providers repeatedly told her to exercise, but she did not.[49] Therefore, the ALJ properly discounted Plaintiff's subjective testimony.

### 3. Plaintiff exhibited symptom magnification.

The ALJ properly discredited Plaintiff because the record showed symptom magnification. An ALJ may discount a claimant's subjective testimony if the record indicates symptom magnification.[50] The ALJ's conclusion that Plaintiff showed symptom magnification is supported by the record. In January 2015, Dr. Chau began treating Plaintiff for pain management and noted that she had guarded range of motion in all areas.[51] He also noted that when she was asked regarding pain with palpation she had quite exacerbated responses, but yet when palpated with distraction, she did not have much reaction.[52] Dr. Chau found Plaintiff's examination was "really not very typical" for fibromyalgia[53] because there was much self-limitation and stiffness.[54] The ALJ properly discounted Plaintiff's testimony for this reason.

### 4. Plaintiff's daily activities and work history contradicted her testimony.

The ALJ also concluded that Plaintiff's daily activities contradicted her allegations of disabling symptoms, which is a proper reason for discounting her testimony.[55] A claimant's daily activities should not have a negative impact on credibility unless those activities contradict the claimant's other testimony or are

---

[49] *See* AR 64–65 (Plaintiff states that several medical providers told her that she simply needed to exercise); *see e.g.*, AR 421, 439, 642, 979.
[50] *See Thomas v. Barnhart*, 278 F.3d 947, 958–59 (9th Cir. 2002) (testimony properly discredited where Plaintiff "engage[d] in considerable histrionic exaggeration."); *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (a claimant's tendency to exaggerate is a permissible reason to find him or her non-credible).
[51] AR 823–824.
[52] *Id.*
[53] *Id.*
[54] *Id.*
[55] *See* AR 22.

transferable to a work setting.[56] Here, the record supports the ALJ's conclusion that Plaintiff's daily activities contradicted her other testimony. For instance, Plaintiff reported she was completely disabled, yet she was frequently able to lift 15–20 pounds as she cared for her pet cats, made simple meals, did laundry and dishes, vacuumed, drove, managed financial accounts, shopped, ate out at restaurants, decorated the house, went up and down stairs, cared for her husband after he was in a major motor vehicle accident, and traveled to Seattle and back in the same day.[57] Therefore, the ALJ did not err in discounting her testimony.[58]

Finally, the ALJ properly discounted Plaintiff's testimony because her work history was inconsistent with her testimony.[59] An ALJ may consider a claimant's work history when determining whether to credit the claimant's testimony.[60] The conclusion that her work history contradicted her testimony was supported by substantial evidence in the record. Plaintiff testified that she continued to work about 20 hours per week, although the ALJ stated "that estimate seems low given the pattern in her tax returns."[61] Further, in March 2011, Plaintiff reported to a medical provider that she was working 32 hours a week.[62] This constitutes an adequate and supported reason to discount Plaintiff's testimony.

Each of these reasons alone are adequate reasons to discount Plaintiff's testimony. All were supported by substantial evidence on the record. Therefore, the ALJ did not err in discrediting Plaintiff's subjective testimony.

---

[56] *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (citation omitted).
[57] AR 315–322, 582, 767, 802.
[58] *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (upholding credibility finding where ALJ found that claimant "leads an active lifestyle, including cleaning, cooking, walking her dogs, and driving to appointments").
[59] *See* AR 22.
[60] *Thomas v. Barnhart*, 278 F.3d 947, 958–59 (9th Cir.2002) (noting that the ALJ may consider the claimant's work record).
[61] AR 22.
[62] AR 793.

**B.     The ALJ did not err in rejecting Plaintiff's medical providers.**

The ALJ's decision to afford little weight to the opinions of Dr. Chau, Dr. Galbraith, Dr. Sawyer, Dr. Smiley, and Mr. Frazier was substantially supported by the evidence and not contrary to governing legal standards. Therefore, the ALJ did not err in rejecting Plaintiff's medical providers.

### 1.     <u>The ALJ properly discounted the opinion of Dr. Chau.</u>

The ALJ properly assigned little weight to the opinion of treating physician, Dr. Chau.[63] In weighing medical source opinions, the Court distinguishes among three types of physicians: (1) treating physicians, who treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant.[64] Generally, more weight is given to the opinion of a treating physician than to the opinion of a non-treating physician.[65] Where a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record.[66] The ALJ gave several reasons for discounting Dr. Chau's testimony, each of which are sufficient to meet the higher "clear and convincing" reason standard.

The ALJ properly discounted Dr. Chau's opinion because Dr. Cahu's Residual Functional Capacity Questionnaire from December 10, 2015 was in checkbox form with no meaningful explanation for the limitations.[67] An ALJ may dismiss the opinion of a treating provider if their opinion is a check-off report that does not contain meaningful explanations.[68] The ALJ's conclusion is supported by the record:

---

[63] AR 24.
[64] *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).
[65] *Id.*
[66] *Id.*
[67] AR 24.
[68] *Molina*, 674 F.3d at 1111.

the report is mostly checkboxes and contains limited explanations.[69] The ALJ also correctly noted that "some of the responses did not even make sense, like responding yes to a question asking for a list of medication side effects."[70] Therefore, the ALJ provided a proper reason supported by substantial evidence in the record to dismiss Dr. Chau's opinion.

Further, the ALJ properly discounted Dr. Chau's opinion because it was inconsistent with Dr. Chau's own treatment notes.[71] A treating physician's opinion can be discredited based on contradictions between the opinion and the physician's own treatment notes.[72] The ALJ's decision was supported by substantial evidence. Dr. Chau's January 20, 2015 report states "[Plaintiff's] exam was really not very typical for [fibromyalgia.] There was much self-limitation and stiffness that is not typical for fibromyalgia."[73] However, he later stated in his Residual Functional Capacity Questionnaire on December 10, 2015 that Plaintiff was not a malingerer.[74] Further, in the several months after Dr. Chau prescribed Plaintiff Fentanyl, Dr. Chau's notes consistently describe Plaintiff as "extra happy," "without pain behavior, in "no distress," and in "good spirits."[75] This is inconsistent with his December 2015 opinion showing extreme limitations and pain.[76] The reports also show other inconsistencies; for example, although Dr. Chau stated "we generally do not encourage use of narcotics for fibromaylgic patient," he prescribed Fentanyl anyway.[77]

---

[69] AR 833–39.
[70] AR 24; *See* AR 834.
[71] AR 820–824.
[72] *Buck v. Berryhill*, 869 F.3d 1040, 1050 (9th Cir. 2017).
[73] AR 824.
[74] AR 834.
[75] AR 820–821.
[76] AR 833–39.
[77] AR 824 (Dr. Chau simply stated that in this case Fentanyl was determined to be necessary without explaining why).

ORDER RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT - 10

2. <u>Dr. Smiley</u>

The ALJ properly discredited the initial opinion of non-examining medical expert Dr. Smiley.[78] Dr. Smiley testified that he agreed with "all [Plaintiff's] doctors" who found Plaintiff likely could not sustain work even at the sedentary level.[79] However, Dr. Smiley changed his mind when asked follow up questions:

> ALJ: Do you get a sense, from the medical record, of what her actual level
> of work is right now? I mean, are you aware that she's continuing to work at
> some level?
> ME: No, I wasn't.
> ALJ: Does that change things for you?
> ME: Oh, yes. Yes.
> ALJ: Uh-huh.
> ME: If she can if she can function at a sedentary occupation or whichever level, then that changes a whole lot of things for me.[80]

Dr. Smiley revised his initial opinion upon receipt of further information. This reason alone is sufficient for the ALJ to discredit the initial opinion.

Second, the ALJ properly discounted Dr. Smiley's initial opinion because the premise that "all her doctors" agreed that Plaintiff was disabled was inaccurate. The ALJ may discredit opinions that rely on demonstrably false information. Plaintiff concedes that not all of Plaintiff's doctors opined that she was unable to work.[81] The record also supports the ALJ's conclusion that not all doctors found Plaintiff was disabled. Plaintiff admitted in her testimony that at least four medical providers, including her primary care physician, told her that her condition is not disabling.[82] Therefore, the ALJ permissibly discounted Dr. Smiley's original opinion.

---

[78] AR 24. Although Plaintiff states generally that the ALJ erred in weighing Dr. Smiley's opinion, Plaintiff does not present any argument regarding the ALJ assigning "some weight" to Dr. Smiley's comments about the subjective nature of fibromyalgia.
[79] AR 50–51.
[80] AR 51.
[81] ECF No. 11 at 15.
[82] AR 64–66.

ORDER RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT - 11

The ALJ also properly gave "some weight" to Dr. Smiley's comment that Dr. Chau's note of symptom magnification was "very significant."[83] Plaintiff argues that "a single notation of possible symptom magnification" is nonconsequential. However, the reports of consultative physicians called in by the ALJ may serve as substantial evidence.[84] The ALJ permissibly gave some weight to that portion of Dr. Smiley's testimony. Therefore, the ALJ did not err in weighing Dr. Smiley's opinions.

### 3. The ALJ properly discredited the opinion of Dr. Galbraith.

The ALJ properly assigned little weight to the 2015 report of treating physician Dr. Galbraith because it was in checkbox form with no meaningful explanation for the limitations.[85] The report indeed contains mostly checkboxes with no meaningful explanations and was therefore properly discounted.[86]

In addition, the ALJ noted that Dr. Galbraith addressed Plaintiff's mental condition, which was unrelated to her obstetrics and gynecology practice area.[87] In evaluating a medical opinion, the specialty of the physician providing the opinion is an important factor.[88] Further, Dr. Galbraith did not perform a mental health examination on Plaintiff during her consultations.[89] An ALJ may discount opinions that are inconsistent with a physician's own treatment notes.[90] The records supports this conclusion: her report shows no mental health assessment.[91] The ALJ properly discounted Dr. Galbraith's testimony.[92]

---

[83] AR 52–52.
[84] *Magallanes v. Bowen*, 881 F.2d 747, 752 (9th Cir. 1989)
[85] AR 24.
[86] AR 840–842.
[87] *See* AR 24.
[88] *Orn*, 495 F.3d at 631 (citing 20 CFR § 404.1527(d)(3)–(6)).
[89] AR 774–87
[90] *Buck*, 869 F.3d at 1050.
[91] AR 967.
[92] Moreover, the ALJ found that these limitations were inconsistent with the longitudinal medical record. AR 24. However, as the ALJ has provided sufficient reasons to discount Dr. Galbraith's opinion, the Court need not address this remaining contention of error.

### 4. The ALJ properly discredited the opinion of Dr. Sawyer.

The ALJ reasonably discounted the opinion of examining physician, Dr. Sawyer, because it relied on Plaintiff's subjective complaints.[93] Where an examining physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record.[94] Under either standard, an ALJ may discount an examining provider's opinion if it is based to a large extent on a claimant's self-reports.[95] The record supports the ALJ's finding that Dr. Sawyer's opinion was based in large part on Plaintiff's self-reports. For example, Dr. Sawyer noted several times that "the claimant tells me" and "the claimant clearly feels" thus demonstrating that he relied on Plaintiff's self-reported symptoms.[96] Therefore, the ALJ properly provided a clear and convincing reason for rejecting Dr. Sawyer's testimony.

In addition, the ALJ properly discounted Dr. Sawyer's opinion because it contradicted Plaintiff's mental health examination performed by Dr. Sawyer. The ALJ provides a clear and convincing reason when they reject an examining physician's opinion for internal inconsistencies.[97] The ALJ's conclusion is supported by the record, which shows that Plaintiff's level of consciousness and orientation, attitude and behavior, concentration and attention, speech, language and thought process, and thought content were all normal.[98] The only abnormal finding was that

---

[93] AR 24–25.
[94] *Garrison*, 759 F.3d at 1012.
[95] "If a . . . provider's opinions are based to a large extent on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). *But cf. Buck*, 869 F.3d at 1049 (stating that "partial reliance" on a claimant's self-reported symptoms is not a reason to reject the opinion).
[96] AR 813, 817.
[97] *See Buck*, 869 F.3d at 1050 (concluding that a physician's opinion can be "discredited based on contradictions between the opinion and the physician's own notes.").
[98] AR 815–817.

Plaintiff's "affect [was] blunted."[99] However, Plaintiff became more animated at times.[100] The ALJ's rational interpretation of the evidence cannot be disturbed by this Court.[101] The ALJ did not err in discrediting Dr. Sawyer's opinion.[102]

### 5. The ALJ properly discredited the opinion of Mr. Frazier

The ALJ properly rejected the opinion of Mr. Fraizer, a physicians' assistant whom is not considered an acceptable medical source but is considered "other source."[103] An ALJ only needs to provide "reasons that are germane to [the] witness" to discount "other source" testimony.[104] First, the ALJ noted that Mr. Frazier's opinion was in checkbox form with no meaningful explanation for the limitations.[105] Second, the ALJ discounted Mr. Frazier's opinion because he did not diagnose or treat Plaintiff's fibromyalgia.[106] Each of these reasons are germane to Mr. Frazier and are supported by substantial evidence.[107] The ALJ did not err in rejecting his opinion.

## C. The ALJ did not err at step four.

At step four of the sequential evaluation process, a claimant bears the burden of proving that he or she can no longer perform his or her past relevant work ("PRW").[108] Notwithstanding the claimant's burden at this step, the ALJ still has a duty to make the requisite factual findings to support his or her conclusion regarding

---

[99] AR 816.
[100] AR 816
[101] *Molina*, 674 F.3d at 1111 ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.") (citation omitted).
[102] The ALJ also states that Dr. Sawyer's opinion was inconsistent with Plaintiff's mental health record as a whole, however, as the two reasons listed supra are sufficient, the Court need not address the issue.
[103] M*olina*, 674 F.3d at 1111; *see also* 20 C.F.R. § 404.1513.
[104] *Molina*, 674 F.3d at 1108.
[105] *See* AR 24–25; *see also Molina*, 674 F.3d at 1111.
[106] AR 24–25.
[107] The report is in check-box form. AR 843–44. The report also states that Mr. Frazier did not himself diagnose Plaintiff with fibromyalgia. AR 843. The ALJ provides additional reasons for discounting Mr. Frazier's testimony, but the two reasons cited are sufficient.
[108] *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001).

the claimant's ability to perform his or her PRW.[109] A claimant must be able to perform "[t]he actual functional demands and job duties of a particular past relevant job" or "[t]he functional demands and job duties of the occupation as generally required by employers throughout the national economy."[110] Accordingly, the ALJ must make specific findings as to (1) the claimant's RFC, (2) the physical and mental demands of the PRW, (3) and the relation of the RFC to the PRW.[111] The ALJ need only make findings as to either actual or general performance of PRW, but not both.[112]

In general, an ALJ should consider first whether a claimant can perform his or her PRW as actually performed and then as generally performed.[113] An ALJ may rely on two sources to define a claimant's PRW as actually performed: "a properly completed vocational report . . . and the claimant's own testimony."[114] The best source for how a job is generally performed is the Dictionary of Occupational Titles (the "DOT").[115]

The vocational expert testified that plaintiff's PRW included the job of manicurist.[116] The vocational expert gave the corresponding DOT number for a manicurist and testified that a manicurist is a "semi-skilled occupation, with a SVP of 3, classified in the sedentary category of work."[117] Further, the vocational expert testified that a hypothetical person with Plaintiff's RFC could perform Plaintiff's

---

[109] *Id.*
[110] *Id.* at 845 (citation omitted).
[111] *Id.*
[112] *Id.* ("We have never required explicit findings at step four regarding a claimant's [PRW] both as generally performed and as actually performed.").
[113] *Id.*
[114] *Id.*
[115] *Id.* at 845–46; *see also* Social Security Ruling ("SSR") 00–4p, 2000 WL 1898704, at *2 (noting that "we rely primarily on the DOT ... for information about the requirements of work in the national economy").
[116] AR 79.
[117] *Id.*

ORDER RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT - 15

PRW as generally performed.[118] The vocational expert identified no inconsistency between his testimony and the DOT.[119]

Plaintiff is correct that the ALJ erred in his step four analysis. The ALJ stated the following regarding plaintiff's ability to perform her PRW:

> The vocational expert, Thomas Polsin, testified that this was a job that did not require the performance of any of the limitations in the claimant's residual functional capacity. Mr. Polsin opined that with the above residual functional capacity, the, the claimant could do her past relevant work as a manicurist. I find Mr. Polsin's testimony persuasive and concur[]. In comparing the claimant's residual functional capacity with the physical and mental demands of this work, I find that the claimant is able to perform it as actually and generally performed.[120]

The ALJ erred in two ways. First, the ALJ failed to make specific findings of fact as to the physical and mental demands of plaintiff's PRW, as required.[121] Second, the ALJ's conclusion that Plaintiff is able to perform the work as actually performed does not appear to be supported by the record. The VE did not measure how Plaintiff actually performed the work, but only examined how the work is generally performed as outlined in the DOT.[122] Plaintiff's work history report is incomplete, so the ALJ could not have relied on that report to determine how the work was actually performed. Plaintiff also did not testify specifically regarding how her work was actually performed.[123] The ALJ did not explicitly make his own findings regarding how Plaintiff actually performed the work.

However, these errors were harmless because they are "inconsequential to the [ALJ's] ultimate nondisability determination."[124] A vocational expert's testimony

---

[118] AR 79.
[119] AR 81.
[120] AR 26.
[121] *See Pinto*, 249 F.3d at 844.
[122] AR 78–83.
[123] *See* AR 56–78.
[124] *Molina*, 674 F.3d at 1115.

ORDER RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT - 16

1 constitutes substantial evidence upon which an ALJ may properly rely.[125] The ALJ
2 relied on the vocational expert's conclusion that plaintiff could return to her PRW as
3 generally performed.[126] The ALJ took measures to ensure that such testimony was
4 consistent with the DOT.[127]

Second, the record reflects that the vocational expert's testimony was consistent with the DOT,[128] which describes the specific physical and mental demands of plaintiff's PRW as generally performed. Notably, Plaintiff does not contend that the vocational expert erred in classifying Plaintiff's PRW according to the DOT, and Plaintiff has identified no evidence of an actual conflict or discrepancy between the vocational expert's testimony and the specific physical and mental demands of Plaintiff's PRW as generally performed.

Accordingly, for the aforementioned reasons, the ALJ's failure to provide specific findings of fact as to the physical and mental demands of Plaintiff's PRW does not constitute reversible error.[129]

**D.  ALJ did not err at step five.**

At step five, the ALJ has the burden to identify specific jobs existing in substantial numbers in the national economy that claimant can perform despite their identified limitations.[130] At an administrative hearing, an ALJ may solicit vocational expert testimony as to the availability of jobs in the national economy.[131] A vocational expert's testimony may constitute substantial evidence of the number

---

[125] *See Magallanes v. Bowen*, 881 F.2d 747, 752 (1989).
[126] AR 79.
[127] *See* AR 81. The ALJ has an affirmative responsibility to ask whether a conflict exists between a VE's testimony and the DICOT. *See* SSR 00–4p; *see also Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007).
[128] 331.674-010 MANICURIST, DICOT 331.674-010.
[129] Other district courts have also treated this kind of error as harmless. *See e.g.*, *Ball v. Colvin*, No. EDCV 12-01272-MAN, 2014 WL 440114, at *5 (C.D. Cal. Feb. 4, 2014) (unpublished); *Jakobs v. Astrue*, 2010 U.S. Dist. LEXIS 96281, 2010 WL 3636236 (C.D. Cal. Sept. 15, 2010) (unpublished).
[130] *Johnson v. Shalala*, 50 F.3d 1428, 1432 (9th Cir. 1995). *See* 20 C.F.R. § 416.920(g).
[131] *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 2011).

of jobs that exist in the national economy.[132] The ALJ's decision regarding the number of alternative occupations must be supported by substantial evidence.[133]

Plaintiff argues that the ALJ's hypothetical failed to take into account the limitations set forth by his providers. However, this argument merely restates Plaintiff's earlier allegations of error, which are not supported by the record. Accordingly, the ALJ's hypothetical properly accounted for the limitations supported by the record.[134]

## IV.  CONCLUSION

Accordingly, **IT IS HEREBY ORDERED**:

**1.** Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is **DENIED**.

**2.** The Commissioner's Motion for Summary Judgment, **ECF No. 12**, is **GRANTED**.

**3.** The Clerk's Office shall enter **JUDGMENT** for Defendant.

**4.** The case shall be **CLOSED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to file this Order, enter Judgment for Plaintiff, provide copies to all counsel, and close the file.

**DATED** this  9th  day of August 2019.

                s/Edward F. Shea
                EDWARD F. SHEA
           Senior United States District Judge

---

[132] *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).
[133] *Farias v. Colvin*, 519 F. App'x 439, 440 (9th Cir. 2013) (unpublished). *See Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).
[134] *See Magallanes*, 881 F.2d at 756–57 (holding it is proper for the ALJ to limit a hypothetical to those restrictions supported by substantial evidence in the record).